The provisions of the 20th section of chapter 291 of the Laws of 1846 are broad enough to protect the gunpowder, which is the subject of this action, from forfeiture, under the provisions of the 18th section of the act. The latter section declares that all gunpowder found within the limits specified in the first section of the act, shall be forfeited to the use of the fire department. The limits specified in the first section are that part of the city of New York lying south of a line running through the center of Sixty-second street (Laws *Page 530 
of 1849, chapter 206), from the East to the North river. The powder in question was found on board of a vessel lying at a wharf within the prohibited district, but it was received as freight on board the vessel on which it was seized, between the hours of 8 and 11 o'clock, A.M.
The 20th section of the act declares that the penalties and provisions of the act shall not extend to any vessel receiving gunpowder on freight, provided such vessel do not remain at any wharf of the said city, or within 300 yards thereof, after sunset (of the day on which the gunpowder is put on board) or on any other day while having gunpowder on board. The vessel was ready, and had orders to proceed to sea on the day the gunpowder was received on board, and was only prevented from so doing by the illegal interference of the fire wardens. The powder was seized before 12 o'clock at noon of the day it was put on board the vessel, and we have no right to presume that the vessel would have remained within the prohibited distance of the wharf after sunset of that day.
It is claimed by the defendants that the 20th section only applies to vessels receiving gunpowder on board, within the prohibited district, from licensed dealers in gunpowder, under the provisions of the 3d section of the act. As before remarked, the language of the 20th section is broad enough to include all vessels receiving gunpowder on freight, whether from licensed dealers or other persons. If it was the intention of the framers of the act to restrict the exemption to vessels receiving gunpowder on freight from licensed dealers, they doubtless would have used language to express that intention, and none other. The act is highly penal, and should be strictly construed.
It may also be observed that to protect from forfeiture under section 13 of the act, gunpowder put on board of vessels within the prohibited district, by licensed dealers, no such provision was necessary as is contained in the 20th section. The 3d section makes it lawful for licensed dealers in gunpowder to send it in the day-time, in quantities not more than five quarter casks at one time, through the streets of the city, if covered *Page 531 
completely and securely with a leathern or canvas bag or case, to a vessel within the prohibited district, and by necessary implication, it authorizes such gunpowder to be put on board of such vessel. The language of the section is as follows: "If the same (such gunpowder) be put on board of any vessel within such district, such vessel shall, before sundown, haul into the stream, to a distance of not less than 300 yards from any dock, wharf, pier or bulkhead, and shall not at any time until 8 o'clock of the morning, while such powder is on board, lie within 300 yards of any dock, wharf, pier or bulkhead of said city." Clearly, as this section declares it to be lawful for licensed dealers to put gunpowder on board of a vessel within the prohibited district, it was useless to declare that such gunpowder was not subjected to forfeiture. The 3d section also provides that a vessel receiving gunpowder on board from licensed dealers shall, before sunset, haul into the stream 300 yards from any dock, and shall not, before 8 o'clock, A.M., while such gunpowder is on board, lie within 300 yards of any wharf in the city. It was unnecessary to repeat these provisions in the 20th section to protect such gunpowder. The 20th section, we must assume (if we would not charge the law makers with consummate folly), was intended to exempt from forfeiture gunpowder which was not already exempted. The legislature was doubtless aware of the fact that the explosive force of gunpowder on board of a vessel was neither greater nor more detrimental when the powder was put on board by a person having no license, than if put on board by a licensed dealer. There is no reason for exempting from forfeiture powder put on board of a vessel by a licensed dealer which does not exist in favor of the exemption of the same article put on board by other parties. The legislature is also to be presumed to have been cognizant of the fact that it is much less hazardous to load powder upon a vessel lying at a wharf, by means of small boats, than by means of carts passing through the streets of the city. It could not have been intended that all the powder put on board of vessels on freight, within the prohibited district, *Page 532 
should be taken to such vessels in the mode most dangerous to property and life. It is sufficient to say that such intention is not expressed in the act, but that, on the contrary, the 20th section declares that the provisions of the act shall not extend to any vessel receiving gunpowder on freight, provided such vessel does not remain at any wharf, dock, pier or bulkhead of said city, or within 300 yards thereof, after sunset of the day the powder is put on board, or on any other day while having such gunpowder on board.
The right to receive gunpowder on freight upon a vessel within the prohibited district, under the conditions specified, being granted, the ordinary reasonable means of enjoying such right should also be held to be granted.
The language of the 20th section would authorize vessels coming into the harbor of New York from other ports, with gunpowder on board, to tranship such gunpowder to another vessel, subject to the conditions of that section, as to hauling into the stream. The 4th section of the act, however, provides that the commander or owner of every ship or vessel arriving in the harbor of New York, with more than 28 pounds of gunpowder on board, shall, within 48 hours after its arrival, and before such ship or vessel shall approach within 300 yards of any wharf, pier or slip within the prohibited district, cause such gunpowder to be landed by means of a boat or boats, or other small craft, at any place without such district most contiguous to any magazine for storing gunpowder, and cause it to be stored in such magazine. The 5th section authorizes such ship or vessel to proceed to sea within 48 hours after her arrival, or to tranship such gunpowder from one ship to another, for the purpose of immediate exportation, without landing such gunpowder as required by the 4th section, but in case such vessel proceeds to sea, or such transhipment is made, it is declared unlawful to keep said gunpowder longer than 48 hours within the harbor of New York, or to approach with such gunpowder within 300 yards of any wharf, pier or slip within the prohibited district. It may be conceded that these provisions in relation to vessels arriving in the harbor of New York, with *Page 533 
gunpowder, are more stringent than those applied to other vessels receiving gunpowder on board under the 3d section of the act, from licensed dealers, or under the 20th section of the act, from such dealers or other persons. And it is difficult to perceive why the legislature should have made it lawful for each and every of the licensed dealers in gunpowder within the city to put five quarter casks or one hundred pounds of gunpowder at one time, upon a vessel lying at a wharf within the prohibited district, and at the same time make it unlawful for the commander of a vessel arriving in the harbor of New York with 29 pounds of gunpowder on board, to approach within three hundred yards of any wharf within the prohibited district, or to tranship such gunpowder upon another vessel within the same distance of such wharf.
We can only say that the act contains such provisions. Under the 3d section of the act, one hundred licensed dealers in gunpowder might have as many carts, each carrying through the streets of the city and delivering to a vessel lying at a wharf within the prohibited district, at the same time, five quarter casks of gunpowder, or in all five hundred quarter casks, and under the 4th and 5th sections of the act, 29 pounds of gunpowder on board of a vessel arriving in the harbor of New York, cannot approach within 300 yards of such wharf, or be permitted to remain within the harbor of New York more than 48 hours. We can only say that the legislature is omnipotent, except where its powers are restricted by the Constitution.
The 4th and 5th sections of the act do not, however, by their terms, extend to any other vessels than such as arrive within the harbor of New York with gunpowder on board; they do not apply to a vessel taking gunpowder on board, outside of the limits of the city of New York, and yet within the harbor of New York. That was the case of the powder company's schooner which brought the powder in question within the district mentioned in the first section of the act. The powder was put on board of the schooner within the harbor of New York. It is not necessary, in this case, to decide whether, after *Page 534 
this schooner arrived within the district mentioned in the first section of the act, the gunpowder on board of it was subject to forfeiture before it was put on board of the plaintiff's vessel, on freight. Conceding that it was subject to forfeiture before it was removed from the schooner, while it lay within the prohibited district, it was not found by the fire wardens until it was taken out of the prohibited district, and out of a forfeitable condition, by being received on freight upon a vessel to which the penalties and provisions of the act did not extend. I do not, however, think that the powder was subject to seizure and forfeiture while it was upon the schooner.
The right to put the powder on the plaintiff's vessel, on freight, is given by the 20th section of the act, and all means of enjoying that right, not prohibited, are lawful, and the 4th and 5th sections of the act do not apply to the powder company's schooner or the powder on board of it. The case is omitted in the act, and it is better that it should be provided for by the legislature than that the courts should violate the unambiguous language of the statute, and usurp a power belonging to another branch of the Government. The province of the Court is jusdicere non dare.
We entertain no doubt that the action was properly brought under the 10th section of the act against the fire department of the city of New York for the acts of the fire wardens.
The judgment should be reversed and a new trial ordered, with costs to abide the event.
DAVIES, WRIGHT, SELDEN and EMOTT, Js., concurred.