account of the injury thus sustained the plaintiff has recovered a judgment for $85 damages, from which judgment the present appeal is taken.

The gate in question was in charge of a gateman employed by the defendant. Just before the accident the gateman raised the gate and left it to go to the water-closet. When he went away no train was due to pass over the crossing for a period of 20 minutes. He fastened the gate up with a clutch or clamp which rendered it immovable unless somebody took the clutch or clamp off. During the gateman's absence a stranger named Walsh, not in the employ of the defendant, removed the clutch and lowered the gate so that it fell upon the plaintiff's wagon and inflicted the damage which was the basis of the recovery.

I do not see how the defendant can be held liable for this injury. The accident was wholly due to the unwarrantable interference of an outsider with the railroad company's property. If it appeared that any similar interference had ever before taken place, or that the experience of the defendant in the management of its road indicated the probability of such an occurrence, it might be held that it was negligence not to guard against it in some manner; but there is no evidence in the record to indicate that such an accident could reasonably have been apprehended, and under these circumstances it is clear that the defendant corporation was not responsible for the consequences of a trespass by a stranger. Bennett v. Long Island R. R. Co., 163 N. Y. 1, 57 N. E. 79. I think the judgment should be reversed.

Judgment of the Municipal Court reversed, and new trial ordered; costs to abide the event. All concur.

---

(89 App. Div. 300.)

## RICKER v. SHALER et al.

(Supreme Court, Appellate Division, Second Department. December 30, 1903.)

1. STREET RAILWAYS—STATUTORY COMMISSION—PROCESS—NUISANCES.

Laws 1891, p. 3, c. 4, providing for rapid transit railways in cities of over 1,000,000 inhabitants, and giving a general power to a board of rapid transit commissioners to determine the necessity of a rapid transit railway, and do all things necessary to carry out the work, is merely a permissive statute, and does not give such commissioners power to store dynamite in the heart of a great city, contrary to the ordinances of the city.

2. NUISANCES—EXPLOSIVES.

The keeping by a contractor in the populous part of the city of upwards of 100 pounds of dynamite—a quantity greatly in excess of the permit for its use issued by the city authorities—is a nuisance, both at common law and under New York City Charter (3 Laws 1897, p. 265, c. 378) § 763, forbidding the manufacture, keeping, or sale of explosives, except in quantities authorized by, and under the regulations of, the fire department.

Appeal from Special Term, Kings County.

Action by George Ricker against Mary L. Shaler, as administratrix of Ira A. Shaler, deceased, and John B. McDonald. From an interlocutory judgment overruling a demurrer to the second defense pleaded in the answer, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, WOOD-
WARD, HIRSCHBERG, and HOOKER, JJ.

Jacob Friedman, for appellant.
Charles P. Howland, for respondents.

WOODWARD, J.   The plaintiff, as assignee of a claim belonging
to one Pettingill, brings this action to recover damages for the de-
struction of certain chattels belonging to the said Pettingill by the
explosion of dynamite stored for the purpose of use in the Rapid
Transit Subway in the city of New York.   The complaint alleges that
John B. McDonald entered into a contract for the construction of a
tunnel under various streets in the city of New York, and that he
sublet a portion of this contract to Ira A. Shaler; that the said Shaler,
in prosecuting this work, employed a large quantity of dynamite in
blasting, and that at the time of the said explosion, and for some
time prior thereto, he wrongfully and unlawfully kept at Park avenue
and Forty-First street a large quantity for such use in such construc-
tion, to wit, 100 pounds and upwards, which quantity was greatly in
excess of the permit for the use thereof issued to the said Shaler by
the fire department of the city of New York, which said permit al-
lowed said Shaler to keep 50 pounds of dynamite, and no more; and
that said permit was the only one issued to the defendant, etc.   The
answer sets up as a second separate defense that under the provi-
sions of chapter 4, p. 3, of the Laws of 1891, creating the rapid
transit commission, the commissioners were given full authority to
determine upon the location of the rapid transit railway, and all mat-
ters connected therewith, and that they were given power to do all
things necessary for the purpose of carrying out these powers; that,
the use of dynamite in blasting being .necessary to the work, the
storing of this dynamite in a populous section of the city, contrary to
the provisions of the permit issued to Shaler, was authorized by the
statute; and that therefore the plaintiff must bear his loss, without
remedy.   The plaintiff demurs to this second defense upon the ground
that said alleged defense is insufficient in law, upon the face thereof.
The learned court at Special Term overruled this demurrer, and the
plaintiff appeals from the interlocutory judgment entered upon the
decision.

As we read the provisions of chapter 4 of the Laws of 1891, it is a
permissive statute, giving a general power to the board of rapid
transit commissioners to determine upon the necessity of a rapid
transit railway, and generally to do all things necessary to carry out
the work; but we nowhere find any specific authority for using or
storing dynamite in the heart of a great city, contrary to the law, ordi-
nances, and regulations of such city.   Permission to do a thing is not
a direction, and a legislative permission neither implies a right to
appropriate property without compensation, nor confers a license to
commit a nuisance.   To base upon a legislative grant of power to do
a thing an immunity from consequences which deprive or tend to
deprive a person of that which is his property, there should at least
be found a direction which is clear and quite unmistakably impera-
tive.   Sammons v. City of Gloversville, 175 N. Y. 346, 352, 67 N. E.

622, and authorities there cited. In Cogswell v. N. Y., N. H. & H. R. Co., 103 N. Y. 10, 24, 8 N. E. 537, 543, 57 Am. Rep. 701, the court cites and approves an English case in which it is said:

"Where the terms of the statute are not imperative, but permissive—when it is left to the discretion of the persons employed to determine whether the general powers committed to them shall be put into execution or not—I think the fair inference is that the Legislature intended that discretion to be exercised in strict conformity with private rights, and did not intend to confer license to commit nuisance in any place which might be selected for the purpose."

This case is cited by the court in Sammons v. City of Gloversville, supra, and it may be accepted as the law of this state. There is no doubt that the keeping of this amount of high explosive in the city of New York is a nuisance, both at common law and under the provisions of the charter (section 763, c. 378, p. 265, vol. 3, Laws 1897); and as the provisions of chapter 4, p. 3, of the Laws of 1891, did not specially authorize the use of explosives or the keeping of them in quantities in excess of that allowed by the municipal authorities, it can afford no defense in this action, where the complaint alleges an actual trespass upon the property of the plaintiff's assignor. The gravamen of the action is the nuisance committed by the original defendant, Ira A. Shaler, who has since died, the action being continued against his administratrix, Mary L. Shaler; and it cannot be defeated under the allegations of the second defense. ·

The interlocutory judgment and order appealed from should be reversed, with costs, and the demurrer sustained, with costs. All concur.