CITY MAGISTRATES' COURT—NEW YORK CITY,
· FIRST DIVISION—THIRD DISTRICT,
March, 1911.

## THE PEOPLE v. ARTHUR R. LEWIS, et al.

(N. Y. Law Journal, Vol XLV, No. 5.)

PENAL LAWS, §§ 1530, 1894—PUBLIC NUISANCE—STORING HIGH EXPLOSIVES.

The having and keeping of large quantities of high explosives, with blasting caps in one pile, *held*, under the circumstances of the case, to be criminal.

*Joseph Du Vivier,* deputy assistant district attorney, for the People; *G. M. Prest* for Arthur R. Lewis, etc.; *Norman W. Kerngood* for James Healing and the Keystone National Powder Company; *Peter P. Acritelli* for the Municipal Explosives Commission.

FRESCHI, City Magistrate. This inquiry is had under summonses issued by this court to ascertain and determine whether a crime has been committed, and if any, by whom, and for such final disposition thereof as at law is provided.

The defendants are charged by the learned district attorney, among other things, with a violation of section 1894 of the Penal Laws of the State of New York, which provides:

" Section 1894. Keeping Gunpowder Unlawfully. A person who makes or keeps gunpowder, nitroglycerine or any other explosive or combustible material within a city or village or carries such material through the streets thereof in a quantity or manner prohibited by law or by ordinance of the city or village is guilty of a misdemeanor. * * * Any person or persons who shall knowingly present, attempt to present or

cause to be presented or offered for shipment to any railroad, steamboat, steamship, express or other company engaged as common carrier of passengers or freight, dynamite, nitro-glycerine, powder or other explosives dangerous to life and limb, without revealing the true nature of said explosives or substance so offered or attempted to be offered to the company or carrier to which it shall be presented, shall be guilty of a felony.   *   *   * "

Two thousand three hundred pounds of dynamite and 10,000 blasting caps or exploders ordered by H. M. Tileston & Co. of the Keystone National Powder Company for shipment by steamship Santa Clara, of the American and Cuban Steamship Line, were delivered by the Katherine W., a tug owned by James Healing, and placed on the Pier 8, East River, on December 24, 1910, where the representatives of the Fire Commissioner of the City of New York subsequently found the cases of dynamite with the exploders.

The defendant Lewis, doing business as the American and Cuban Steamship Line, is specifically charged with the unlawful keeping of the fifty cases of dynamite and blasting caps.

The prosecutor admits that the cases containing the explosive material in question were properly marked. He does not charge that either of the defendants manufactured, sold or carried explosives in and through the streets of the City of New York. The law regulating the manufacture and transportation of explosive or combustible material within the City of New York is to be found in the penal statute quoted above and in the Charter of the City of New York, and in such superseding ordinances as are hereinafter referred to.

The complaint against the defendants Keystone National Powder Company and James Healing having been heretofore dismissed, it must be determined here whether the defendant Lewis did unlawfully keep explosives in a quantity or manner prohibited by law.

With respect to the quantity of explosives that may be kept, or the manner of keeping the same which is prohibited, it seems there is no law; nor is there any ordinance regulating the quantity of explosives that one may leave, have, keep or carry through the streets or store in any part of the city, except as the same is provided for in the provisions of section 763 of the Charter of Greater New York (2 ed., 1901, p. 416), which reads in part as follows: " No person shall manufacture, have, keep, sell or give away any gunpowder, blasting powder, gun-cotton nitroglycerine, duolin or any explosives or compounds within the corporate limits of the City of New York, except in the manner and upon the conditions herein provided, and under such regulations as the fire commissioner shall prescribe; and said commissioner shall make suitable provision for the storage and safekeeping of gunpowder and other dangerous and explosive compounds or articles enumerated under this title beyond the interior line of low water mark in the City of New York.   *    *    * "

The statutes concerning possession of and transportation of explosives in the city are police regulations in the prevention of nuisance (Foote v. Fire Dep't, 5 Hill, 99; Cathcart v. Fire Dep't, 26 N. Y., 529).   The foregoing section of the charter only remained in force until the board of aldermen passed ordinances regulating the matter provided for in that section. On May 13, 1902, the board of aldermen did adopt ordinances superseding the foregoing provisions of the charter, and such ordinances were approved by the mayor on May 19, 1902.   The ordinances provided, substantially, that there shall be a municipal explosives commission which consists of five members, the fire commissioner being ex-officio chairman and a member of the commision, the remaining four members being appointed by the mayor, whose duty it is to formulate and adopt " such regulations as in its judgment may be necessary to carry out the purposes of his ordinance, and from time to time to add to or

in any way change or amend such regulations, subject to the approval by the mayor." Subdivisions 4, 7, 8 and 9 of this ordinance provides:

" 4. No person, firm or corporation shall have, keep, sell, use, give away or transport any gunpowder, blasting powder, guncotton, dynamite, nitro-glycerine or any substance or compound or mixture or article having properties of such a character that alone or in combination or contiguity with other substances or compounds it may decompose suddenly and generate sufficient heat or gas or pressure, or all of them, to produce rapid flaming combustion, or administer a destructive blow to surrounding persons or things, within the corporate limits of the Cty of New York, excepting in the manner and upon the conditions herein provided, and under license issued by the fire commissioner under such regulations as the municipal explosives commission shall prescribe. The said fire commissioner shall have power to revoke the license or licenses in case, in his judgment, there is an infraction of the provisions of this ordinance or of the regulations of the municipal explosives commission.

7. No holder of a license hereunder can avail himself of any of the privileges of the same until he shall have filed a bond with the said commissioner in the penal sum of not less than one thousand dollars ($1,000) nor more than five thousand dollars ($5,000), to be approved by the comptroller, the amount of the said bond to be determined by the regulations as prescribed by the Municipal Explosives Commission, said bond to be conditioned for the payment of any loss, damage or injury resulting to persons or property from explosions and for the strict observance of this ordinance and the regulations made hereunder.

8. The Municipal Explosives Commission may, by a unanimous vote of its members, subject to the approval of the fire commissioner, provide for an increase of the amount of the bond to be filed with the said commissioner, in accordance with

section 7 of this ordinance, to an amount not exceeding twenty-five thousand dollars ($25,000), said bond to be approved by the comptroller in accordance with section 7 of this ordinance.

9. In case of the violation of the provisions of this ordinance or regulations on explosives, even though no damage to persons or property be sustained, twenty (20) per cent. of said bond for the first infraction and the whole amount for the second offense shall be forfeited therefor, and paid over to and for the use and benefit of the relief fund of the Fire Department of the City of New York."

In conformity therewith, the Municipal Explosives Commission organized, formulated and adopted a set of rules and regulations governing the handling and keeping of dynamite, etc., to be found in pamphlet form issued by the commission, entitled " Laws, Rules and Regulations Governing the Manufacture, Storage, Sale and Use of Explosives and Combustible Material in the City of New York " (People's Exhibit 8).

Among the other regulations formulated and adopted by the said commission it is provided:

" Sec. 27. No explosives shall be landed at the piers or elsewhere in the city or transferred to a vessel lying at a pier unless the explosives contained in the vessel making delivery are in charge of a duly certified employee or a person, firm or corporation licensed to transport or sell explosives within the city limits. No explosives shall be landed at the city piers unless for immediate loading into wagons for distribution to consumers for use within twenty-four hours and for which orders have been previously received or for immediate transportation by railway to points beyond the city limits.

Sec. 29. Explosives not exceeding five thousand pounds for shipment by vessel to ports outside of the city may be loaded from one vessel to another when lying at the city piers; provided, however, black powder or exploders shall not be transferred at the same time with high explosives or from the same

boat or lighter; amounts in excess of five thousand pounds shall only be put on board a vessel when it is more than one thousand feet from the city pier line.

Sec. 30. Vessels of licensees approaching the city piers shall not carry exploders at the same time with explosives."

Section 46 provides that magazines shall contain only the amount of explosives named in the permit.

One of the questions presented is: Are the rules and regulations of the Municipal Explosive Commission binding and valid, and have they the same force and effect as a law enacted by a legislative body?

The rules and regulations of the Municipal Explosives Commission seem to have no binding force or effect and cannot be treated and respected as law. Still, they must be regarded as regulations of vital importance to the people of this community, inasmuch as they deal with and attempt to regulate in matters generally and specifically affecting the safety of the public and for its welfare. If the orders, rules and regulations formulated and promulgated by the Municipal Explosives Commission in connection with the administrative offices and powers and duties of the fire commissioner are to serve any purpose, and are to be enforced at all, they ought to have the sanction of the legislative and executive branches of our State and municipal government. This commission, a creature of the statute law, can only have such rights as by law shall be conferred upon it. The local legislature—here the board of aldermen—cannot relieve itself of its responsibility or shift the power to legislate. The delegation by the board of aldermen of their powers or any of them to an administrative commission created by the board with authority to ordain by resolution with the same effect as though it were a lawmaking body is unlawful. The police powers should be jealously guarded by the people. They are important privileges conferred by popular will on legislative bodies for the common public weal, and for that reason are to

be carefully and cautiously exercised only by legally constituted bodies representative of the people in the legislative branch of civil government. To allow the legislative body to transfer and by resolution or ordinance to confer any of these powers and privileges of regulation upon a commission, committee or person attached to or a part of the executive branch of our system of government would be a clear violation of the cardinal principles upon which our government's very existence as founded depends. The alienation or even temporary suspension would seem to jeopardize our civic wellbeing.

The storage and handling of high explosives is a matter of vital importance and of much public interest. All ordinances for the government of the city and the regulation of local internal affairs shall be adopted by the board of aldermen and approved by the mayor under the provisions of the city charter which is the source of this authority. These powers of a municipality may not be delegated to any commission or subsidiary body created by the board of aldermen, but only such authority or power can be delegated as deals with matters purely ministerial. This does not include the exercise of judgment which relates to matters affecting the government of the city; it only concerns merely business acts (Hinman v. Clark, 51 Misc. 252; Powel v. Tuttle, 3 N. Y. 396; Comm'r of Excise v. Sackridler, 35 N. Y. 154; Birdsall v. Clark, 73 N. Y. 73; Matter of Emigrant Bank, 75 N. Y. 388; Phelps v. Mayor, etc., of N. Y. 112 N. Y. 216, 220; Kramrath v. City of Albany 127 N. Y. 575; aff'g 53 Hun, 206).

The power to control the manufacture, transportation and keeping of high explosives is a regulation of the greatest importance, requiring the most careful and deliberative judgment and discretion by the corporate authorities of the municipality. No more could be the legislative body usurp the power of the executive than the judiciary may of either of them or vice versa. If it were otherwise, it would only be a question of a

short time before our system of independent and three-branch form of government would come to an unsuccessful and disorderly end. Confusion and chaos would take the place of law and the orderly administration of public affairs. The anomalous condition in the respect of regulating the manufacture, sale, transportation and storage of high explosives and combustible materials may be remedied without delay, and suitable and sufficiently comprehensive statutes or ordinances should be enacted or ordained providing that legislative sanction which seems necessary for the proper establishment of rules and regulations concerning the manufacture, having, keeping, transportation, sale and use of high explosive and combustible materials. If by reason of the improper delegation of power to legislate in this respect rules and regulations have been made by a commission that are not operative and enforcible just the same as law, then some regulations that are legal ought to be made by the proper authorities clearly prescribing and limiting the amount of combustible materials that may legally be accumulated at any one time and place. The most effective supervision should be exercised in such cases.

The statutory inhibition against persons keeping explosives in a *manner* prohibited by law or prohibited by a city ordinance suggests the question as to whether there is any law or ordinance prescribing the *manner* in or *condition* under which explosives may be kept without any infraction of the provisions of section 1894 of the Penal Laws. The only regulation as to the manner of and condition permitting the keeping of explosives may be found in subdivision 4, section 763 of the ordinance adopted May 13, 1902, which in part provides:

" No person, firm or corporation shall *have,* keep, sell, use, give away or transport any dynamite   *   *   *   within the corporate limts of the City of New York, excepting in the manner and upon the conditions herein provided, and under license issued by the fire commissioner.   *   *   * "

The defendant Lewis, through the acts of his agents and employees, kept and had on his dock dynamite in violation of this ordinance; in other words, he had no license from the fire commissioner for the keeping of such dynamite. For the purposes of this case I deem it unnecessary to consider whether the method provided in the ordinance for the issuance of such a license is lawful or not.

The punishment, however, for such a violation is prescribed in subdivision 9 of the above ordinance, approved May, 1902, which reads:

" In case of the violation of the provisions of this ordinance or regulations on explosives, even though no damage to persons or property be sustained, twenty per cent. of said bond " (as a condition precedent for exercising the privileges under said license, conditioned for the payment of any loss, damage or injury resulting to persons or property from explosives, and for the strict observance of the ordinance) " for the first infraction and the whole amount for the second infraction shall be forfeited therefor and paid over to and for the use and benefit of the relief fund of the Fire Department of the City of New York."

Thus it is made clearly a penalty collectible only under civil process, and in nowise has a criminal court jurisdiction over this specific offense. That seems equally true for the violation of any portion of the said ordinance except in so far as such acts violative of that ordinance may be treated as a public nuisance for which a criminal prosecution may be initiated.

Law is a rule of conduct made by a legislative body. The abortive rules and Regulations of the Municipal Explosives Commission are not law and seem to be contrary to law and well established precedents in the decisions of our appellate courts. They do not impose a duty. Therefore, before considering the question as to whether the defendant Lewis has maintained a public nuisance it must be determined that there is a

law which requires him to do or prohibits the doing of a certain thing. When that has been disposed of, then it must be inquired into whether he has been guilty of any act or commission or an omission in violation of such duty so imposed. A public nuisance is defined by section 1530 of the Penal Laws as follows:

Sec. 1530. Public Nuisance Defined.—' A public nuisance ' is a crime against the order and economy of the State, and consists in unlawfully doing an act or omitting to perform a duty, which act or omission:

1. Annoys, injures or endangers the comfort, repose, health or safety of any considerable number of persons; or

2. Offends public decency; or

3. Unlawfully interferes with, obstructs, or tends to obstruct, or renders dangerous for passage, a lake or navigable river, bay, stream, canal or basin, or a stream, creek or other body of water, which has been dredged or cleared at public expense, or a public park, square, street or highway; or

4. In any way renders a considerable number of persons insecure in life, or the use of property."

All persons were prohibited from having or keeping dynamite except upon the issuance of a license and the furnishing of a bond (Ordinance 1902, subd. 4). Lewis failed to procure a license, as was his duty; in this way he was guilty of an act of omission; therefore, the keeping of the dynamite was unlawful. No decision has been called to my attention, nor have I learned of any that holds that this last cited ordinance is invalid because, while it provided for a license to be procured " in such manner as the Municipal Explosives Commission may require," it failed to specify the manner in which the license was to be issued or had. The accumulation and having of 2,300 pounds of high explosives with 10,000 exploders stored and kept, one on top of the other, at one place, with other freight, where the public had easy access thereto, on a dock in the heart of the City of New York, as appears from the evidence adduced be-

fore me, is a public nuisance (People v. Sands, 1 Johns., N. Y. 78; Meyer v. Malcolm, 6 Hill, 292; Ricker v. McDonald, 89 App. Div. 300). The syllabus in Meyer v. Malcolm (supra) states: " The act of keeping a large quantity of gunpowder in a wooden building insufficiently secured and situated near other buildings, thereby endangering the lives of persons residing in the vicinity, amounts to a public nuisance." It is liable to explode and do great damage to life and property when it is not subject to proper care and supervision. Consideration of public good must be taken into account. The defendant's servants received it, and the defendant may be said to have had possession. The word " have " comprehends every act of possession whether for immediate purpose of removal or not, if such possession be in a store or other building or place. In the common phrase defendant Lewis had the dynamite in his possession (Foote v. Fire Dept., 5 Hill 99). In the Ricker case Judge Woodward, writing for the court, said, at page 302: " There is no doubt that the keeping of this amount " (about 100 pounds or more) " of high explosive in the City of New York is a nuisance both at common law and under the provisions of the charter (Laws 1897, chap. 378, sec. 763)    *    *    *."

The courts in civil cases have consistently maintained that the storage of gunpowder, no matter how carefully, in densely populated places, is a private nuisance, and the party storing it must answer for damages resulting from an explosion, because there is always danger of an explosion (Heeg v. Licht, 80 N. Y. 579; Van Orden v. Robinson, 45 Hun 567, 570). In determining what constitutes a public nuisance much depends on the location, quantity and surrounding circumstances of the storing, having and keeping dynamite and exploders.

The having and keeping of such a large quantity of high explosives, with blasting caps, in one pile, under the circumstances of this case, is criminal, and we should have drastic laws to deal summarily with such violations. For example, the

recent explosion at Communipaw, N. J., in which lives and property were sacrificed at the threshold of our city, and the safety of the very island of Manhattan threatened and imperiled, is a sufficient warning to our legislators that our community and our people must be protected to the fullest extent. While such drastic legislation may work some hardships and inconvenience in some few cases, it will, on the whole, protect us against terrible disasters such as I have cited.

I am of the opinion that the questions of fact in this case should be submitted to a trial court (see People v. Sands, supra).

Let a formal complaint as proved by the Code of Criminal Procedure be taken against the defendant Lewis.