THE BOARD OF COMMISSIONERS OF EXCISE OF DELAWARE COUNTY, Respondent, *v.* DANIEL W. SACKRIDER, Appellant.

The board of excise, under the act of April 16, 1857, being charged with duties involving the exercise of discretion, cannot delegate their authority to be exercised by another.

The board may employ an attorney to conduct any prosecution commenced by them, but cannot give general authority to commence such prosecution at his discretion.

In the employment of an attorney, etc., the board, or a majority of them, must act, or authorize the act.

Where one of the board has instituted proceedings, and the consent of the other members can be presumed, the proceedings will be sustained.

APPEAL from the judgment of the Supreme Court reversing the judgment of the County Court, and affirming that of the justice. Cause certified to this court.

The action was brought, in the name of the board of excise, to recover two penalties for violation of sections 13 and 14 of the act entitled " An act to suppress intemperance, and to regulate the sale of intoxicating liquors," passed April 16, 1857. S. C. Johnson claimed to appear for the plaintiff. The defendant appeared by William Murray, Jr., who objected to Johnson's authority to appear. On being sworn, Johnson testified, in substance, that he was authorized by the commissioners to bring any action he saw fit before this suit was brought, though nothing was said about this particular suit. One of the commissioners was informed by him of the suit, and approved of it the day before the return day of the summons. Otherwise all the authority he had was a general authority to commence suits for violations of the excise law.

The justice held that his authority was sufficient; and thereupon the defendant answered the complaint by a general denial; and set forth, as a special defense, that he sold liquor as an agent of one Flower, who had a tavern license. The suit was then adjourned, by consent, to January 6, 1860, at one o'clock P. M., at defendant's request; at which time and place Mr. Johnson again appeared for the plaintiff, and

defendant by William Murray, Jr., who objected to Johnson's appearing, on the same grounds as at the joining of the issue; and the same evidence as to his authority to appear was produced. On motion of defendant, the plaintiff consenting, the cause was again adjourned to February 17, 1860, at one P. M., at which time and place Johnson again appeared for the plaintiff, and the defendant again objected to his authority, and the same evidence was again taken to prove it. Thereupon Calvin Palmer was called as a witness for the plaintiff, but did not appear. An attachment was issued against him as a defaulting witness, and, by consent of the parties, the same was made returnable forthwith. The justice " held the court open and delivered said attachment to William Simmons, a constable, who returned the same to the justice February 24, 1860, at 7 P. M., personally served, and bringing Charles Palmer into court." Suit was then called; plaintiff appeared by S. C. Johnson; defendant did not appear.

Johnson then testified that he saw the defendant's attorney, William Murray, Jr., but a few minutes before, and notified him that the witness had been brought in on the attachment, and he was ready to go on with the case. Murray refused to appear. He stepped into court while the proceedings were going on, but refused to appear for defendant, saying that he had no business there. The justice, after hearing the witnesses produced by Johnson on behalf of the plaintiff, rendered a judgment against the defendant for $100 damages and $2.96 costs. Some other questions of minor importance arose during the proceedings before the justice, which it is unnecessary to notice.

*William Murray, Jr.*, for the appellant.

*S. C. Johnson*, for the respondent.

MORGAN, J. The County Court reversed the judgment of the justice, upon the ground that the action was discontinued by the seven days' delay which occurred between the issuing and actual return of the attachment against the witness

Charles Palmer. The Supreme Court reversed this decision of the County Court. The opinion in that court suggests two grounds upon which the judgment of the justice might be sustained : one, that there was nothing in the case to show that the defendant did not consent to the justice's holding his court open from the 17th to the 24th of February, 1860. Another is, that the statute clothes the justice with discretion in relation to holding his court open in such a case, and that nothing but abuse of this discretion would authorize the court to reverse his decision ; and that there was no evidence of any such abuse in this case. As to the authority of Johnson to appear for the board of excise and conduct the suit, it is said the commissioners all met and gave him a general authority to bring any actions he saw fit for violations of the law under which this suit was brought.

It is also supposed that Johnson's authority to appear for the plaintiff was sufficiently proved by what was said to him in recognition of this action by one of the commissioners, and his approval of it the day before.

It will be convenient to examine these several questions in the order in which they arose before the justice.

And first, I will say that there is no authority cited to sustain the proposition that the board of excise can devolve upon an agent or attorney the right to determine what suits shall be brought against individuals for violation of the excise laws. That duty is by law cast upon the board of commis-sioners. The statute provides that the penalties for violation of the excise laws shall be sued for and recovered in the name of the board of commissioners of excise ; and in case of neglect for the period of ten days after. complaint to them that any provision of the act has been violated, accompanied by reasonable proof of the same, any other person may prosecute in their name. (2 Laws of 1857, pp. 414, 415, §§ 22 and 30.) This action was not brought under the authority conferred upon Johnson by the 30th section of the act, but by virtue of a general authority to bring such suits as he thought fit. It is not a case where the commissioners employ an attorney to bring particular suits, they themselves having

first considered the question as to the propriety of the suits; but the attorney is left to act in the place of the board of commissioners and determine for them what suits shall be brought. The commissioners substitute the attorney in their place and stead, and undertake to depute to him all their authority, so far as they have authority, to determine any question as to the propriety of bringing suits against individuals for violation of the excise laws.

In my opinion, the commissioners of excise are clothed with something more than a mere naked authority; they are intrusted with an office which requires discretion, and are clothed with a trust which is to be exercised for the public good.

The act is one which, except as otherwise provided in section 30, is to be performed by the commissioners themselves. The duties of the office involve a trust and confidence which they cannot assign to a stranger. (See Story on Agency, § 5 and *seq.*, 6 Bacon Abr., 37, title Offices and Officer (L); *Powell* v. *Tuttle*, 3 Comst., 396; *The State of New York* v. *The City of Buffalo*, 2 Hill, 434.)

The difficulty is, that the commissioners here undertook to farm out the business of bringing suits to an attorney-at-law without first determining what suits should be brought. It is known to be a profitable business to lawyers, and if the practice pursued by the commissioners in this case is to be tolerated, it may lead to great abuse.

The law having cast the duty upon the board of commissioners of excise in such a case, I do not think it can be or should be deputed to third persons.

The next question is, whether the recognition of the suit by one of the commissioners, and his approval of it the day before the return of the summons, is sufficient authority to the attorney to appear in the action.

I see no reason why the commissioners could not employ Johnson to appear in a suit already commenced in their names, although it was commenced without their knowledge or authority in the first instance. But whether *one* commissioner may do this, is quite another question. The bringing of a

suit in this case is the act of the board, and not of the commissioners as individuals. In practice, however, I think it rarely happens that the commissioners get together as a board to determine what actions shall be brought, and it would seem that one of them might be intrusted with such a power with benefit to the public interests. There is nothing, however, in the nature of the duty to be performed, or in the language of the act, to take the case out of the general rule. When a power is delegated for a mere private purpose, all the persons upon whom the authority is conferred must unite and concur in its exercise; and in cases of the delegation of a public authority to three or more persons, a majority must concur in its exercise. (*Perry* v. *Tynen*, 22 Barb., 137.) It was held, in the case above cited, that the withdrawal of a suit by the overseers of the poor to recover penalties for violation of the excise law, involved the exercise of judgment and discretion, and required the assent of both overseers, and that one alone had no power to discontinue.

In cases where there is ground for presuming the consent of the other commissioners, their proceedings will be sustained, and such a presumption will be made, unless it be clearly shown to be otherwise. (*Downing* v. *Rugar*, 21 Wend., 178.)

It is said in the case above cited, that the consent of the other overseer would be presumed, unless it was disproved by direct proof to the contrary, which it was supposed could only be done, in that case, by the testimony of the other overseer. Doubtless the evidence to disprove the consent of the other commissioners must be satisfactory, and leave no grounds upon which their consent can be presumed. When, however, the consent of the other commissioners is disproved by competent evidence, the court must act upon it as in other cases.

The attorney himself, in the case at bar, instituted the suit without the knowledge of any of the commissioners under a general authority to prosecute all persons he had a mind to, which we have seen did not confer upon him any authority to bring this suit. The suit was therefore instituted without any legal authority. The attorney states that, after the suit

was commenced, he saw only one of the commissioners and told him what he had done, and he approved of it.

This, the attorney himself states, is the only authority he had to appear in the action. It cannot, therefore, be fairly claimed that the other commissioners united in directing the suit, or that they recognized it after it was brought and prior to the claim of Johnson to appear in it.

In my opinion, therefore, there is no ground for presuming that this suit was ever authorized by a majority of the commissioners. This result, however, does not prevent a general retainer by the commissioners of excise, of an attorney to appear for them in any suits which the board of commissioners direct to be brought. The power, however, of directing what suits shall be brought cannot be delegated to third persons, but must be exercised by the commissioners, or a majority of them.

If I am right in these views, it will necessarily lead to a reversal of the judgment, without considering the other question. I will, however, briefly examine the question upon which the judgment of the justice was reversed by the County Court, and which was the principal question discussed in the opinion of the Supreme Court. It will be observed that justices' courts have some incidental and general powers besides those expressly conferred by statute.

Where no special provision is otherwise made by law, such court is vested with all the necessary powers which are possessed by courts of record of this State. (2 R. S., 225, § 1.)

The statute is silent as to any adjournment, where the justice is authorized to issue an attachment to compel the appearance of a defaulting witness; but it is plainly to be implied that the court may be held open or adjourned a reasonable time for the return of the attachment, for the object of the proceeding is to procure the attendance of the witness upon the trial. He may doubtless make it returnable forthwith or at a future day, depending upon what shall seem to the justice a reasonable time to procure the witness. (Cow. T., 4th ed., §§ 1220, 1238.)

Suppose the witness is within the county, and no reason

appears why his attendance cannot be procured within a few hours? I doubt not the justice is authorized to hold his court open and await the officer's return. But unforeseen accidents may occur which make it impossible for the officer to execute the attachment the same day or the next. What is the justice to do? It would perhaps be prudent to call the parties before him and adjourn over from day to day until the witness is produced. We do not know in this case what caused the delay; but the return shows that the defendant consented that the attachment should be made returnable forthwith.

We must assume that there were good reasons for the delay. Both parties resided in the same place, and the defendant must have known that he was liable to be called upon at any time to go before the justice to try the action. He was called upon, and showed no reason why he was not as well prepared to try the action as he was when the attachment was taken out. I do not think we can say, as a matter of law, that the justice erred in waiting seven days for the return of the attachment; although I think it would be error in the justice to hold his court open without consent of the opposite party to await the return of an attachment, when there was no reason to believe that it could not be served forthwith. He should adjourn to a future day in such a case. Here, for aught that appears, it was uncertain when the attachment could be served. There may have been grounds to believe that the witness might not be procured short of the seven days, and yet there may have been a prospect of his being brought in much sooner; so the defendant himself consented, as may be supposed, that the attachment might be made returnable forthwith, which necessarily required the justice to hold his court open in the mean time, instead of adjourning it from day to day. Every reasonable presumption will be indulged in to sustain the judgment in this case; and inasmuch as the defendant did not object, but consented that the attachment should be returnable forthwith, I think he must be deemed to have assented that the court might be kept open until it

was duly returned, although a delay of seven days without such consent would, I think, amount to a discontinuance of the action. But if the Supreme Court came to a correct conclusion upon this branch of the case, still, for reasons before stated, I think their judgment should be reversed and that of the County Court affirmed.

The judges did not pass upon the question of holding court open seven days.

All the judges concurring.

Judgment reversed.