PEOPLE ex rel. BUCKBEE v. BIGGS, State Health Com'r, et al.

(Supreme Court, Appellate Division, Third Department. January 18, 1916.)

1. HOSPITALS ⚙➔2—ESTABLISHMENT—PUBLICATION.
    Public Health Law (Consol. Laws, c. 45) § 319, providing that the person, corporation, or municipality desiring to establish a tuberculosis hospital shall petition the state commissioner, requesting the fixing of a date when hearing may be had upon the petition, and that notice of such hearing shall be mailed to the person, association, corporation, or municipality proposing to establish the same, and to the health officer and each member of the board of health in the town in which it is proposed to establish such hospital, at least 20 days from the hearing, and shall also be published twice in a local newspaper, contemplates a special notice to each member of the board of health of the town and the health officer, 20 days before the date fixed for hearing, and a general notice to all people of the town by publication.
    [Ed. Note.—For other cases, see Hospitals, Cent. Dig. §§ 1, 2; Dec. Dig. ⚙➔2.]

⚙➔For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. HOSPITALS ⊕⟶2—TUBERCULOSIS HOSPITALS—ESTABLISHMENT.

Public Health Law, § 319, declaring that every person, corporation, or municipality desiring to establish a tuberculosis hospital shall petition the state commissioner of health, setting forth a description of the locality, and requesting the fixing of a date and place where a hearing may be had upon the petition, provides that the state commissioner of public health and the local health officer, who have been constituted a board to approve or disapprove the establishment of the hospital, shall hear the petition. The commissioner of health, by Laws 1913, c. 559, is authorized to bind a deputy to perform such duties as may be prescribed by the commissioner. *Held* that, as the duties of the state commissioner, sitting as a member of the board, are discretionary, and as such duties are not part of his general duties, he cannot appoint a deputy to sit as a member of a board to determine the question of the location of a tuberculosis hospital, and a board composed of such a deputy commissioner has no jurisdiction.

[Ed. Note.—For other cases, see Hospitals, Cent. Dig. §§ 1, 2; Dec. Dig. ⊕⟶2.]

3. HOSPITALS ⊕⟶2—TUBERCULOSIS HOSPITALS—ESTABLISHMENT.

That a member of the local board of health did not desire notice of a hearing for the establishment of a tuberculosis hospital, required to be given by Public Health Law, § 319, does not excuse the absence of such notice.

[Ed. Note.—For other cases, see Hospitals, Cent. Dig. §§ 1, 2; Dec. Dig. ⊕⟶2.]

4. APPEAL AND ERROR ⊕⟶185—PRESENTATION OF QUESTIONS BELOW—JURISDICTION.

As the consent of a party does not operate to give jurisdiction, the contention that the board, required by Public Health Law, § 319, to give consent to the establishment of a tuberculosis hospital, was without jurisdiction, may be raised at any stage of the case.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1166 - 1176, 1375; Dec. Dig. ⊕⟶185.]

Certiorari by the People of the State of New York, on the relation of Orville L. Buckbee individually and as trustee of School District No. 16 of the Town of Queensbury, Warren County, N. Y., against Hermann M. Biggs, State Commissioner of Health, and others, to review their determination. Determination set aside.

Argued before KELLOGG, P. J., and LYON, HOWARD, WOODWARD, and COCHRANE, JJ.

Chambers & Finn, of Glens Falls (Walter A. Chambers and Beecher S. Clother, both of Glens Falls, of counsel), for relator.

Egburt E. Woodbury, Atty. Gen. (James S. Y. Ivins, Deputy Atty. Gen., of counsel), for defendants Biggs and Chapman.

Loyal L. Davis, of Glens Falls, for defendant Dunlop.

WOODWARD, J. The proceeding brought here for review was instituted by a petition of the board of supervisors of Warren county, requesting the state commissioner of health, to fix the date and place for a hearing upon the petition of said board under the provisions of section 319 of the Public Health Law (Consol. Laws, c. 45). By the provisions of section 45 of the County Law (Consol. Laws, c. 11) the boards of supervisors of the several counties are authorized by a majority vote to establish county hospitals for the care and treatment of

⊕⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

persons suffering from the disease known as tuberculosis, and when any such board has voted to construct such a hospital it is authorized to purchase real property for such purpose and—

"(2) to erect all necessary buildings, make all necessary improvements and repairs and alter any existing buildings, for the use of said hospital, provided that the plans for such erection, alteration or repair, shall first be approved by the state commissioner of health."

How this consent of the state commissioner of health is to be obtained is provided by section 319 of the Public Health Law, which declares that:

"A hospital, camp or other establishment for the treatment of patients suffering from the disease known as pulmonary tuberculosis, shall not be established in any town by any person, association, corporation or municipality except when authorized as provided by this section."

This provision of the statutes went into effect on the 10th day of April, 1909, but prior to that time it had been recognized that the establishing of such hospitals was in the nature of a menace to the people of the locality where they were to be located, and it had been provided that such a hospital or camp for the treatment of the disease should not be—

"established in any town by any person, association, corporation or municipality, unless the board of supervisors of the county, and the town board of the town, shall each adopt a resolution authorizing the establishment thereof, and describing the limits of the locality in which the same may be established."

In other words, the Legislature recognized the principle of home rule, and made the consent of the local authorities necessary to the lawful establishment of such a hospital within the limits of any town in this state, and, in construing the statute, we should give effect to its letter and spirit. Every man takes his property subject to the rule that he must use it so as not to injure his neighbor by anything in the nature of a menace to health; and, recognizing that a tuberculosis hospital or camp is of this character the Legislature has sought to protect the residents of the towns against such an establishment without their consent, where the facts reasonably permit of objection. Finding the original provision unsatisfactory, in 1909 the rule fixed by section 319 of the Public Health Law was put into effect, and the relator objects to a determination made under the petition of the board of supervisors, on the grounds that the proceedings have not conformed to the requirements of the statute, and in this contention we believe he is entirely right.

[1] Section 319 of the Public Health Law, after providing that the person, corporation, or municipality desiring to establish such a hospital shall petition the state commissioner of health, setting forth a description of the locality, etc., and requesting the fixing of a date and place where a hearing may be had upon the petition, provides that the state commissioner shall fix a date for such hearing and that:

"A notice of such hearing specifying the date and place thereof and briefly describing the proposed site for such hospital, camp or other establishment, shall be mailed to the person, association, corporation or municipality proposing to establish the same and to the health officer and each member of the

board of health of the town in which it is proposed to establish such hospital, camp or other establishment, at least twenty days before the hearing, and also publish twice in a local newspaper of the town, or if there is no such paper published therein then in the newspapers of the county designated in pursuance of law to publish the Session Laws."

It is then further provided that:

At the "time and place fixed for such hearing the state commissioner of health and the local health officer [who by a previous provision have been constituted a board "to approve or disapprove the establishment of such hospital"] shall hear the petitioner and any person who desires to be heard in reference to the location of such hospital, camp or other establishment, and they shall within thirty days after the hearing, if they are able to agree, approve or disapprove of the location thereof and shall notify the person, association, corporation or municipality of their determination."

This determination, if they agree, is made final and conclusive, with a further provision for dealing with the subject in the event of their failing to agree, not necessary to be here considered. While the statute is not clear upon the point of publication, we are of the opinion that the law contemplated a special notice to each member of the board of health of the town and the health officer at least twenty days before the date fixed for the hearing, and a general notice to all of the people of the town, by publication. The act provides that at the hearing the "petitioner and any person who desires to be heard in reference to the location" shall be heard, and it would seem to follow that all were entitled to the like length of notice. It is conceded that there was no paper published in the town of Queensbury, Warren county, and it is not disputed that the publication of the notice in two newspapers was not completed 20 days prior to the date of the hearing. It is also to be noted that it does not appear from the record that the two newspapers in which these notices were printed were the newspapers designated by law to publish the Session Laws, and the record is defective in this regard. However, in the view we take of the matter this need not be the point of decision.

[2] The relator appeared specially at the hearing and objected to the jurisdiction of the board on the grounds, among others, that the board assuming to act at the hearing was not composed of the state commissioner of health and the local health officer; that there was no authority to delegate the powers of the state commissioner of health to any deputy or any other person; that no notice was mailed to each member of the board of health of the town of Queensbury at least 20 days before the hearing, nor was such notice published as required by law. It seems to us that the contention of the relator is sound, and that the board as constituted at the time of the alleged hearing, on the 23d day of September, 1915, was without jurisdiction to determine the question upon which the right of the petitioners to proceed depended. Looking for the intent of the Legislature, we find, in an act to take effect on the 10th day of April, 1909, that a tuberculosis hospital shall not be established "except when authorized as provided by this section." It then provides that the moving party shall petition the state commissioner—

"describing the character thereof, stating the county and town in which it is to be located and describing the site in said town for such proposed hospital,

156 N.Y.S.—66

camp or other establishment, and requesting the commissioner to fix a date and place for a hearing on such petition before the state commissioner of health and the local health officer, who shall constitute a board to approve or disapprove the establishment of such hospital, camp or other establishment in accordance with such petition. * * * At the time and place fixed for such hearing the state commissioner of health and the local health officer shall hear the petitioner," etc.

At the time this provision was made there was no provision in the statutes for a deputy commissioner; the commissioner was authorized to appoint such assistants as he might need, and to "designate in writing one of his assistants who shall possess the powers and perform the duties of commissioner of health during his absence or inability to act, or during a vacancy in the office"; but this gave him no powers, except in the absence or inability to act on the part of the commissioner, or during a vacancy in the office. We may therefore conclude that, at the time section 319 of the Laws of 1909 was enacted, the Legislature did not contemplate authorizing the state commissioner of health to substitute a deputy or agent on the board provided for in the section. The language of the statute is, "The state commissioner of health and the local health officer, who shall constitute a board to approve or disapprove the establishment," etc.; and this certainly did not provide that some one designated by the state commissioner of health would do just as well. A discretionary power, requiring the exercise of responsible judgment, was vested by the statute in a board, to consist of the state commissioner and the local health officer, and that board could not be constituted by deputy and the local health officer, any more than a board to consist of the Governor and a local health officer could be made up of the lieutenant governor, as such, and a local health officer.

This is not a question of whether a deputy may discharge the duties of the chief officer, but whether a board, to be constituted of a particular officer of the state in conjunction with a local officer, may be constituted by the deputy of the state officer and the local officer; and we are of the opinion that it may not. The Legislature has pointed out a particular officer to act, not as state commissioner of health, but as a member of a board specially constituted to perform a particular duty. He performs no duty assigned to the state commissioner of health; his only duty is that of a member of a specially created body for a definite purpose. He is selected because he holds the particular office, but his duties are not those of state commissioner of health, but of a member of this board; and a deputy appointed under the provisions of chapter 559 of the Laws of 1913, who is to "perform such duties as may be prescribed by the commissioner," is not, and cannot be, authorized to perform the duties of this specially constituted board. The commissioner is not authorized to make his assistant a member of the board provided for in section 319 of the Public Health Law; that is another and different office from that of the state commissioner of health, and the rule is well established that in the exercise of a public as well as a private authority, whether it be ministerial or judicial, all the persons to whom it is committed must confer and act together, unless there be a provision that a less number may proceed. Powell v. Tuttle, 3 N. Y.

396, 401. So we see that the board or the local health officer acting by himself could not gain jurisdiction, and where the duties of the office involve a trust and confidence, or involve judicial powers, there can be no delegation. Board of Excise v. Sackrider, 35 N. Y. 154, 157; Ontario Knitting Co. v. State, 205 N. Y. 409, 416, 98 N. E. 909, and authorities there cited.

[3] If we are right in the above view, it is unnecessary to determine the other points suggested by the relator; but it seems obvious that, where a statute prescribes that certain conditions must be performed in order to give jurisdiction to act, there must be a full compliance with the statute, unless there is some legitimate and controlling excuse for nonperformance, as in Walden v. City of Jamestown, 178 N. Y. 213, 70 N. E. 466. Here it is conceded that one of the members of the local board of health was not served with notice, though the statute requires that each member shall be so served; but it is urged that this particular member did not care to be served, and was not interested in the matter. But it is not a question of the desires of Julius F. Hicks personally. The law required that each member of the town board of health should have a written notice at least 20 days before the hearing, and whether Mr. Hicks had or had not a personal interest in the matter is of no consequence. As a public officer of the town he was required to have notice, and the board could not get jurisdiction of the subject-matter of the petition without such notice.

[4] Whether certiorari was the best way of presenting this question is only of incidental importance. If the relator had not proceeded by certiorari, and had permitted the proceeding to go on without further protest, it would doubtless have been urged against him that he had waived his rights, although it is probable that an action to prevent the expenditure of the public funds could be maintained by a proper party at any time, for, where an act is done without jurisdiction, even the consent of a party does not operate to give jurisdiction (Matter of the Will of Walker, 136 N. Y. 20, 29, 32 N. E. 633; Knickerbocker Trust Co. v. O., C. & R. S. Ry. Co., 201 N. Y. 379, 384, 386, 94 N. E. 871), and a jurisdictional question may be raised at any stage of the case (Davidsburgh v. Knickerbocker Life Ins. Co., 90 N. Y. 526, 529; Reining v. City of Buffalo, 102 N. Y. 312, 6 N. E. 792; Callahan v. Mayor, 66 N. Y. 656; Kamp v. Kamp, 59 N. Y. 212, 216, and authorities there cited).

The determination of the persons assuming to act as a board to determine the location of a hospital in the town of Queensbury should be set aside, as having been made without jurisdiction.

Determination annulled, with $50 costs and disbursements. All concur.