## E. C. OLSEN CO. v. STATE TAX COMMISSION.

No. 6889.   Decided April 18, 1946.   (168 P. 2d 324.)

Rehearing Denied June 14, 1946.

564

See 37 C. J., Licenses, sec. 117; 42 Am. Jur., 537. Retroactive operation of regulation of administrative authority amending a previous regulation, note 153 A. L. R., 1188.

*James A. Howell, David L. Stine,* and *Neil R. Olmstead,* all of Ogden, for plaintiff.

*W. L. Skanchy, Wayne L. Christoffersen,* and *G. Hal Taylor*, all of Salt Lake City, for defendant.

WOLFE, Justice.

Certiorari to review the action of the State Tax Commission in finding plaintiff deficient in its sales tax payments as provided for by the Emergency Revenue Act of 1933, c. 63, as amended by Chapter 20, Laws of Utah, 2nd Special Session 1933 and by Chapter 91, Laws of Utah 1935.

Plaintiff corporation has been for many years and now is engaged in the manufacture and/or sale of fruit picking boxes, fertilizers, insecticides, shipping crates and related items. Since the passing of the Emergency Revenue Act of 1933 (Sales Tax Act) plaintiff has not collected sales tax from its customers nor has it remitted to the Tax Commission any amount as a sales tax on the sales of insecticides to growers, car strips, picking boxes, pea canning trays, milk cases or boxes and corrugated can cases.

From the time of the passing of the Sales Tax Law until February, 1945, no action was taken by the State Tax Commission to collect from plaintiff the sales tax on the above sales. During said period of over twelve years an auditor from the Tax Commission audited plaintiff's books one or more times. There is evidence that said auditor told plaintiff's manager that the sales in question were exempt from the sales tax.

On the 3rd of February, 1945, the State Tax Commission made a deficiency assessment against plaintiff for the sales tax on above listed sales for the past three years. Plaintiff filed a petition for hearing on the proposed deficiency which hearing was held before two members of the Tax Commission on the 9th of March, 1945. A further hearing was held on May 10th, 1945 before the four members of the Commission. The findings and decision in the matter, dated August 30th, 1945, were signed by only two members of the Com-

mission, both of whom attended all the hearings. Said decision ordered plaintiff to pay sales tax on sales of the above listed items made during the past three years. No penalties were imposed.

The sales tax in this state is a tax on the "consumer". Section 80-15-4 and 2, U. C. A. 1943; *Western Leather & Finding Co.* v. *State Tax Commission of Utah,* 87 Utah 227, 48 P. 2d 526. It is the duty of the vendor to collect the tax from vendees who are "consumers" and to remit same with proper records to the Tax Commission. Section 80-15-5, U. C. A. 1943. However, the last cited section of the code makes the vendor to consumers liable for the sales tax regardless of whether or not said vendor collects said tax from the vendee.

Plaintiff's attack on the actions of the Tax Commission is based on the following contentions:

1. The plaintiff taxpayer did not have a hearing before the Tax Commission as provided by law in view of the fact that the Tax Commission is a four-man Commission and only two commissioners attended one of the hearings.

2. That no tax deficiency has been assessed against plaintiff since the decision on the hearings is signed by only two commissioners.

3. That all of the questioned sales come within the exemptions allowed by subdivision (f) 80-15-2, U. C. A. 1943, which reads as follows:

"Each purchase of tangible personal property or product made by a person engaged in the business of manufacturing, compounding for sale, profit or use, any article, substance or commodity, which enters into and becomes an ingredient or component part of the tangible personal property or product which he manufactures, or compounds, or the container, label or the shipping case thereof, shall be deemed a wholesale sale and shall be exempt from taxation under this act; and for the purpose of this act, poultry, dairy and other livestock feed, and the components thereof, and all seeds and seedlings, are deemed to become component parts of the eggs, milk, meat and other livestock products, plants and plant products, produced for resale; and each purchase of such feed or seed from a wholesaler, or retailer as well as from any other person shall be deemed a wholesale sale and shall be exempt from taxation under this act."

4. That the questioned sales of "car strips" and of "picking boxes" are wholesale sales in fact.

5. That in view of the facts that for over twelve years and since the sales tax law was enacted the Tax Commission did not attempt to make plaintiff charge sales tax on the questioned sales and that during said twelve years Tax Commission auditors have on one or more occasions assured plaintiff that said sales were excluded from said tax, the Tax Commission is now precluded from demanding the amount of the back tax.

As to the plaintiff's first contention: Did the taxpayer have a hearing though a quorum of the Tax Commission did not attend all sessions thereof? Section 80-5-40, U. C. A. 1943 provides:

"A majority of the [Tax] Commission shall constitute a quorum for the transaction of business."

In the case of *Crow* v. *Industrial Commission*, 104 Utah 333, 140 P. 2d 321, 322, 148 A. L. R. 316, this court held that where there is a conflict in the testimony, and the weight and credibility to be given testimony of the various witnesses is the determining factor, the person who hears the testimony and sees the witnesses while testifying, whether a member of the board, or an examiner or referee, must pass on to the deciders his findings, conclusions and impressions on the testimony he heard. Where, at the time the decision is rendered, he has severed his connections with the board, commission or fact finding body, the record must show affirmatively that the one who finds the facts had access to the benefit of his findings, conclusions and impressions on such testimony, by either written or oral reports thereof. This court there said:

"This does not necessarily require that all of the commissioners must be present at the hearing, or even that the one hearing the evidence must concur in the result, but his opinion on the testimony must be available to the commission in making its decision."

In the writer's concurring opinion in the Crow case, supra,

on page 326 of the Pacific Report, the matter is summarized as follows:

"The upshot of the matter is that even where the Administrative Agency is performing functions in their nature judicial * * * the requirements of due process do not require that he who conducts the hearing must make or participate in the decision * * *. What is required to satisfy the demands of due process, that is, of a full or fair hearing, is that he who observes the witness and listens to the evidence must transmit his observations or conclusions to those others who, whether they are superiors or associate members of the same agency, are to decide and this may be done in the form of tentative findings or by a report or recommendations or orally in conference. And ordinarily where the examiner is still connected with the agency at the time it renders its decision it will be presumed that he has communicated his observations and conclusions to the body which employes him or of which he is a part. * * *." Also see 42 Am. Jur. 484, 485.

In the case at bar the men who conducted the hearings were Tax Commissioners at the time the decision on said hearings was rendered. Presumably all members of the Commission had the benefits of the hearers' observations and conclusions. It follows that there is no merit in plaintiff's contention that a full hearing was not had because a quorum of the Commission did not attend all sessions thereof.

We proceed to the question of whether or not there is a deficiency assessment against plaintiff by the decision which was signed by only two of the four Tax Commissioners.

The Tax Commission is created by statute and has only such powers as the statute confers upon it. Such ■ powers must be exercised in accordance with the statute. Section 80-5-37, U. C. A. 1943 provides:

"The state tax commission shall be composed of four members * * *."

Section 80-5-40, U. C. A. 1943 states:

"* * * A majority of the [tax] commission shall constitute a quorum for the transaction of business."

Our statute merely defines a quorum for the transaction of Tax Commission business. It is silent as to what part of

the quorum must concur to perform Commission business.

It is our opinion that when the Legislature used the word "quorum" in reference to the Tax Commission it intended that when a quorum of the Commission is present, a majority thereof is sufficient to conduct the business of the Commission. See *Brown* v. *District of Columbia*, 127 U. S. 579, 8 S. Ct. 1314, 32 L. Ed. 262; *Frischer & Co., Inc., et al.* v. *Bakelite Corporation et al.*, Cust. & Pat. App., 39 F. 2d 247, for that rule in reference to public commissions. See *Leavitt* v. *Oxford & Geneva Silver Mining Co.*, 3 Utah 265, 1 P. 356; *Buell* v. *Buckingham*, 16 Iowa 284, 85 Am. Dec. 516; *Sargent* v. *Webster*, 13 Metc., Mass., 497, 46 Am. Dec. 743; *Ex Parte Willcocks*, 7 Cow., N. Y., 402, 17 Am. Dec. 525; *Wells* v. *Rahway White Rubber Co.*, 19 N. J. Eq. 402, 404; Fletcher Cyclopedia Corporations (permanent edition), Section 425, for the rule applied to corporate board of directors. See *United States* v. *Ballin*, 144 U. S. 1, 12 S. Ct. 507, 36 L. Ed. 321, for the principle applied to Congress. For cases holding contra, usually under unique wording of statutes or the state constitutions, see *Chicago Rys. Co.* v. *Commerce Commission*, 336 Ill. 51, 167 N. E. 840, 67 A. L. R. 938; *State of Minnesota* v. *Gould*, 31 Minn. 189, 17 N. W. 276; *Wood* v. *Gordon*, 58 W. Va. 321, 52 S. E. 261.

Thus, when four commissioners of the Tax Commission are present, three must agree to constitute an act of the Commission. When only three are present, two must concur to constitute an act of the Commission. If only two particpate, whether they agree or not, their actions are not those of the Commission because there was no quorum.

Rendering a decision as to the tax deficiency of plaintiff taxpayer is a transaction of Tax Commission business which when made requires that a quorum of the Commission be present and a majority of those present must agree in order for same to be an act of the Commission. *State Tax Commission of Utah* v. *Katsis*, 90 Utah 406, 62 P. 2d 120, 107 A. L. R. 1477.

Our statute (80-15-13, U. C. A. 1943) requires that

"Every decision of the tax commission shall be in writing."

It is silent as to how said writing shall be evidenced.

The question arises: Does a decision required by statute to be made by a commission in writing have to show on its face that a quorum of the commission was present when said decision was made and that a majority of those present agreed to the decision?

We think that under our statute a decision of the Tax Commission must be in writing but it need not affirmatively show on its face that a quorum of the commissioners were present when it was made and that a majority of those present concurred in the decision. See *Frischer & Co., Inc., et al.* v. *Bakelite Corporation,* supra.

Unless the decision clearly shows on its face that it is not the act of the Commission, it will be presumed that it was regularly made unless the party attacking it shows the contrary. See *Downing* v. *Rugar,* 21 Wend., N. Y. 178, 34 Am. Dec. 223; *Board of Commissioners of Excise* v. *Sackrider,* 35 N. Y. 154; *Peoria* v. *Central Nat. Bank,* 224 Ill. 43, 79 N. E. 296, 12 L. R. A., N. S., 687; *Doughty* v. *Hope,* 3 Denio 249; *McCoy* v. *Curtice,* 9 Wend., N. Y., 17, 24 Am. Dec. 113; *Tooele Bldg. Ass'n* v. *Tooele High School District,* 43 Utah 362, 134 P. 894; *Rio Grande Western R. Co.* v. *Stringham et al.,* 38 Utah 113, 110 P. 868; *Nicholson* v. *Villepigue,* 91 S. C. 231, 74 S. E. 506; *In re Mayor, etc. of City of New York,* 95 App. Div. 533, 88 N. Y. S. 769. For the opposite view, see *Chicago Rys. Co.* v. *Commerce Commission,* supra.

The decision in this case is subscribed by only two commissioners. Neither the decision nor the record shows how many commissioners participated in making the decision. There is nothing on the face of this decision to show it is not that of the Commission; neither is there anything in the record which shows that a quorum of commissioners did not participate in making the decision or that a quorum participating, a majority did not concur in the decision. The signatures of the two commissioners show their concurrence. The absence of the signatures of

the other two commissioners does not show their disapproval or that they did not participate in making the decision.

If the so-called decision shows on its face that it is not the decision of the Commission—for example, if it shows that two commissioners did not participate in making it—it could not be enforced. Under such circumstances the taxpayer could attack in this court the purported decision as plaintiff is doing in this case, or could wait, as was done in the Katsis case cited above, and raise the point when the Commission attempts to collect the deficiency.

When the taxpayer wishes to attack the decision on the grounds that it is not the act of the Commission when, as in this case, the defect is not shown on the face of the decision, he should do so before the Tax Commission by motion supported by affidavit or by some other appropriate method. The point could then be reviewed on appeal as in the case of *Board of Commissioners of Excise* v. *Sackrider*, supra.

Plaintiff's third contention is: The questioned sales are exempt by the provisions of sub-division (f), 80-15-2, U. C. A. 1943, supra.

As originally enacted by the Legislature, the sub-division provided:

"Each purchase of tangible personal property or service or product made by a person engaged in the business of manufacturing, compounding for sale, profit or use, any article, substance, commodity or service, for use in such business shall be deemed a wholesale sale and shall be exempt from taxation under this act." (Chapter 63, Laws of Utah, 1933, sub-division (f) of Section 2).

As the act then stood everything purchased by a manufacturer for use in the business of manufacturing was exempt from the tax. By Chapter 20, Laws of Utah, 2nd Special Session 1933, the Legislature amended the sub-division by exempting only those purchases of personal property .

"which enter[s] into and becomes an ingredient or component part of the tangible personal property or product which he manufactures, or compounds, or the container, label or the shipping case thereof."

The Legislature by this amendment intended that manufacturers and processors should pay the sales tax on those items they consume in their business and be exempt only on those items which are passed on to other consumers.

The addition of Chapter 91, Laws of Utah, 1935, which amends the sub-division by adding

"and for the purpose of this act, poultry, dairy and other livestock feed, and the components thereof, and all seeds and seedlings, are deemed to become component parts of the eggs, milk, meat and other livestock products, plants and plant products, produced for resale; and each purchase of such feed and seed from a wholesaler, or retailer as well as from any other person shall be deemed a wholesale sale and shall be exempt from taxation under this act"

was made with the intent to clear up any ambiguity there might be as to whether the mentioned sales were exempt or not.

By no reasonable construction can we agree with plaintiff's contention that the Legislature intended to exempt all purchases of materials needed to prepare agricultural products for market. Rather, the processor of agricultural products is on the same footing as the processor of any other type product. The test is: Are the articles involved consumed by the processor as the last user? If they are so consumed, the tax must be paid thereon by the processor. On the other hand, if the articles enter into and become an ingredient or component part of what he manufactures, and are thus passed on to the final user, or the articles are containers, labels, or shipping cases of what he manufactures, the processor does not pay the tax.

The materials involved in the questioned sales in this case and the undisputed uses to which said materials are put by plaintiff's vendees are as follows:

Insecticides—which are sold directly to and for the utlimate use of growers of vegetables or fruit. (The commission admits that sales of insecticides to processors or canning companies for resale to growers are not taxable so it is unnecessary to here discuss same.)

Car Strips—these are described as strips of wood used in bracing filled boxes of fruit or vegetables within a railroad car.

Picking boxes—these are described as wooden boxes which are used by the growers to collect vegetables and fruit in the fields and orchards and to transport said produce to the cannery or other processor. These wodoen boxes are in the first instance sold by the plaintiff to the canneries or other processors and are then distributed by the canneries or other processors to the growers.

Pea canning trays—these are purchased by canneries or other processors, such as freezers, and are wooden trays used to contain vegetables, usually shelled peas, and to transport them from viners to the factory or from one place to another in the factory.

Milk cases or boxes—these are containers used by dairies to deliver milk, in either bottles or pasteboard containers, to their customers; in other words, as carriers for bottles. These are used by the dairies over and over again.

Corrugated can cases—these are corrugated pasteboard cartons, which are purchased by canneries for packing tin cans of fruit or vegetables, and by the Union Pacific Railroad Co. for redistribution of their canned food products in the operation of its dining car system.

Insecticides are not intended to "enter into and become an ingredient or component part of" the produce on which they are used. If they did so the produce would probably be unfit for human consumption. In fact, the growers are required to remove from their produce as much as they can of the insecticides used thereon. It follows plaintiff should collect tax on the sales of insecticides to growers.

Car strips, picking boxes, pea canning trays and milk cases or boxes unquestionably do not enter into and become an ingredient or component part of the finished products, neither are they containers or labels or shipping cases within the meaning of sub-division (f). Sales thereof are not exempt thereby from the sales tax.

The car strips are used only once and that by the purchases from plaintiff to brace his boxes of fruit in the railroad cars. The picking boxes are used over and over again between field and cannery until they are destroyed or worn out—they clearly do not become part of the processed fruit or vegetables. Pea canning trays are used only in and around the vineries and the factories and do not ever go with the finished products as containers. Milk cases or boxes are used as conveniences in handling the containers full of milk. They are used over and over again, always by the dairy.

Corrugated can cases sold to the Union Pacific Railroad Co. are used until worn out by the railroad within its own system. The railroad is the consumer and sales to it are subject to the tax. Sales of the corrugated can cases to canneries to be used for packing tin cans of fruit and vegetables are not subject to the tax as the cases are shipping cases of the finished products and come within the exemption of sub-division (f) of the Code.

We come to plaintiff's contention that, even if the questioned sales are not exempt by sub-division (f), the sales of car strips and picking boxes are wholesale sales in fact and so not subject to the tax. There is no evidence that the car strips are resold by plaintiff's vendees; sales of same by plaintiff cannot therefore be held wholesale sales.

The picking boxes are sold by plaintiff to canning companies; the canning companies distribute them to the various growers, who use same for the purpose of picking their fruit or vegetables and as containers of said fruit and vegetables to take same to the canneries. The boxes are used over and over again. The general practice is for the canneries to charge the account of the growers for the boxes at the time they get same, and, at the end of the season, the canneries credit the grower for each box returned—some canneries credit at the same rate charged and others credit a few cents less per box. Plaintiff contends the boxes are sold by the canneries to the growers with a right to sell them back again and thus plaintiff's sale of the boxes to the can-

neries is a wholesale sale. Defendant takes the position that the canneries loan the picking boxes to the growers taking a deposit to insure their return.

The Uniform Sales Act, Section 1, defines a sale ■ as:

"A sale of goods is an agreement whereby the seller transfers the property in goods to the buyer for a consideration called the price."

The question in this case is: Did the title to the boxes pass from the cannery to the grower at the time the grower took possession of the boxes and the cannery charged the grower's account for same? The intention of the parties at the time of the transaction is the controlling factor of whether or not title passed.

The great weight of the evidence in this case is that the transactions between canneries and growers in reference to picking boxes are not sales. Extracts from letters, which were admitted as evidence without objection, written by canneries in answer to inquiries as to the use of picking boxes by them are as follows:

In answer to plaintiff's inquiries:

"All picking boxes furnished by us to growers are billed at a figure representing our cost. The grower is then entitled to the use of a specified number of boxes during the harvest season. At the close of the season if the grower returns all picking boxes, he is given credit for the amount of the original charge less 5c per box per season which is charged by us as a rental for the use of the boxes. In case the grower does not return all of the boxes for which he contracts at the beginning of the season, then he is expected to pay the cost of all boxes not returned."

In answer to Tax Commission inquiries:

"This company purchases picking boxes for its own use only."
"Boxes [picking] are rented to farmer until end of season when they should be returned to canner."
"* * * Our picking boxes are not purchased for resale, but are used by us in the operation of our business.
"These boxes are used principally to transport grower's crops from the field to our factory."

■

"No we do not sell picking boxes; these are used for raw products; the only time we charge for a box is when it is not returned, then the farmer usually brings them back and we refund the money. We charge a high enough price that the farmer do [sic] not want to keep them. We want the boxes and do not intend to sell them."

Sales of picking boxes to canneries by plaintiff are not wholesale sales and are subject to the sales tax.

We find no merit in plaintiff's contention that the Tax Commission is precluded from collecting the tax deficiency because of Commission auditor's oral statements that the sales were not subject to the tax and because the Commission has not attempted to collect same for over 12 years.

Where there is an ambiguity in the statute as to whether the latter does or does not cover a particular matter, a practical construction of the statute shown to have been the accepted construction of the agency charged with administering the matters in question under the statute will be one factor which the court may take into consideration as persuasive as to the meaning of the statute. Especially is this true where the agency, as in this case, is one on whom the Legislature must rely to advise it as to the practical working out of the statute and where practical application of the statute presents the agency with unique opportunities an experiences for discovering deficiencies, inaccuracies or improvements in the statute. But such factor is only one among others persuasive on the court when it is engaged in the interpretation of the statute and may be given much or little weight in the total consideration of the question depending on circumstances but never against the plain meaning of the staute. For the so-called practical interpretation to have any weight it must be shown that it was an interpretation adopted by the Commission. The fact that something was done by a subordinate when it is not shown that the Commission had knowledge or acquiesced would in no case be such an interpretation as here meant.

The court, once having spoken on the subject and having found against the tendered interpretation of the statute

claimed to be aided by the so-called practical administrative interpretation given by the agency, the fact that the agency gave it such interpretation can be no protection to those dealing with the agency on the basis of that interpretation. See *Utah Hotel* v. *Industrial Comm.*, 107 Utah 24, 151 P. 2d 467, 153 A. L. R. 1176.

The facts of this case do not show a practical interpretation of the statute by the Tax Commission. No regulations were passed specifically covering the questioned sales. Neither is it shown that the Commission acted in close harmony with the Legislature in respect to legislation or proposals or as an advisory body to the Legislature in reference to these or similar articles during the time they were not taxed with knowledge that they were not taxed. Nor is it shown that the Commission actually knew taxes were not being paid on said sales and so could be said to have acquiesced in the non-collection thereof. Oral statements of Tax Commission auditors do not amount to administrative construction by the Commission.

The facts of this case merely show that for over twelve years the Tax Commission has failed to discover that taxes as required by the sales tax law were not being paid by plaintiff on the questioned sales. The Tax Commission because of said failure to discover the mistake is now precluded by statute (Section 80-15-8, U. C. A. 1943), unless fraud of the taxpayer is shown or return was filed, from collecting the deficiency except for the past three years, which collection the Commission is attempting to make in this case. It will not be seriously contended that because the Tax Commission has for so many years omitted to assess and collect the tax on the questioned sales it is now precluded from performing that duty and from salvaging from its past omissions what it can for the state.

The case is remanded to the Tax Commission for further proceedings in accordance with this opinion. No costs allowed.

McDONOUGH and WADE, JJ., concur.

LARSON, Chief Justice (dissenting).

I dissent. I agree that a decision of the commission must be in writing; that a quorum (3 members) of the commission may transact the business of the commission; and that the decision of a majority of the commission, or the quorum present, constitutes a decision of the commission. I agree that a written decision of the commission need not affirmatively show on its face that a quorum was present when it was made, and that a majority of those present agreed to the decision, as long as the record or minutes of the commission so shows. Quere: If the decision as filed or certified contains the signature of only one member of the commission would it not impel a holding that the face of the order showed it was not a decision of the commission? Where the decision is signed by some members only, I think the conclusion inescapable that the non-signing members either did not approve, or did not participate, in making the decision.

Coming now to the items involved in the taxes in question, I note that as to manufacturers or compounders, there is no sales tax imposed on "containers, labels, and shipping cases" used by the manufacturer or compounder. Such sales are not exempted from sales tax because the tax is passed on to the consumer of the goods so contained, labeled, or shipped, but apparently upon the ground that such articles are not articles sold to be "consumed" as that word is used in the act, but constitute a part of incident of the manufacturing, or compounding, and the marketing process. Certainly there is no sales tax collected from any source on the carton in which 24 or 48 cans of salmon, peanut butter, soap or toilet paper is shipped to the retailer; nor is the bottle in which olives, jam or mayonnaise, cola or beer is contained when sold at retail, "consumed" by anyone. Often the bottle is emptied where purchased and left on the counter; or it is returned for credit, and again used by the bottler. It is not consumed nor does it become a component part of the goods which are sold and consumed, nor is sales tax collected on it in any of such transactions. Such prop-

erty is exempt from the tax—the tax is not passed on to the ultimate consumer. This exemption seems to be upon the theory that while such goods do not enter into and become an ingredient or component part of the product manufactured or compounded, its use becomes a necessary incident to the manufacture and compounding of the product, and the marketing process for getting the goods to an ultimate consumer, without which there could be no taxable sales. This I think, is the theory, import, and purpose of the provisions of exemption in the act, and should govern its interpretation and application.

Insecticides, while not becoming an ingredient or component part of the fruit or vegetable, is an essential element in its production—its manufacture and compoundment. It serves a similar purpose to that of lime in the manufacture of sugar, or chlorine in the purification of waters to be used for human consumption, salt and alum in curing meats and making pickles,—all of which are for the purpose of producing an article that is edible and can be preserved in an edible condition. Otherwise there would be no fruit or vegetables produced for retail sales or consumption. Such insecticides are not "consumed" within the meaning of the act, but are necessarily used in the manufacture of a product for sale and without the use of which such product could not be produced, just as much as in the dye used in producing cloth. I think such sales of insecticides not taxable.

Car Strip—I cannot see where these differ at all from shipping cases. The cases are used to hold the cans, or bottles, bags or loose articles like apples or tools for shipment from manufacturer or producer to the retailer. One could not well shovel butter, jam, pickles or bottles of ketchup loose into a corner of a warehouse, nor into a car from transport. The car strips are just as essential to preserve the goods whole and intact in the shipping process as is the carton or basket. I think the commission was right during the twelve years these sales were not taxed.

Sales of picking boxes and pea canning trays are properly taxable. They are not purchased for resale; they are convenient, but not necessary in manufacturing or producing goods for sale; they are not used up as a necessity in the production of goods; nor does their use or consumption enter into the transaction constituting the effecting and completing of a wholesale sale.

Milk cases have no relation to the production, manufacture, or compounding of tangible property for sale. They are merely conveniences of the retailer in the conducting of his retail business, and are therefore properly taxable. The same is true of the corrugated carton sold to the Union Pacific Railroad.

I must dissent wholly from the holding that the Tax Commission, interpreting and applying an act such as this, can supervise another's business as to taxes he must collect and pay, year after year, directing him to collect and remit taxes on certain transactions, and not to collect taxes on other types of transactions, and then years later comes back and says,

"Because you followed our instructions and directions, you shall now be penalized by being required to pay out of your own pocket the taxes we told you not to collect, and also be subjected to a severe penalty because we have now changed our mind and way of doing business."

Bear in mind that the merchant collecting the sales tax, does so as the agent or employee of the tax commission and under its supervision and direction and not as part of his own business. Nor does it help to say this was done by the auditor. If the tax commission assumes to act through the auditor, it is in the same position as any other concern who assumes to act through a superintendent, foreman, or other agent or employee. The question is not whether the State should have had the taxes, but whether the tax commission can penalize the merchants for doing what the Tax Commission directed them to do. A case that goes farther than this in holding to administrative determination as binding is *United States* v. *Otley*, D. C., 34 F. Supp. 182.

I think Olsen should not be held liable for any of these taxes prior to the time the Commission notified him of its change of policy and interpretation.

I therefore dissent.

PRATT, J., not participating.