**NUCOR CORPORATION, NUCOR STEEL—UTAH DIVISION,**
**Petitioner,**

v.

**UTAH STATE TAX COMMISSION,**
**Respondent.**

No. 900328.

Supreme Court of Utah.

May 18, 1992.

Mark K. Buchi, Gary R. Thorup, Richard G. Wilkins, Salt Lake City, Murray Ogborn, Tim O'Neill, Denver, Colo., for petitioner.

R. Paul Van Dam, Brian Tarbet, Salt Lake City, for respondent.

HALL, Chief Justice:

Petitioner Nucor Corporation, Nucor Steel—Utah Division ("Nucor") seeks review of the order of the Utah State Tax Commission upholding a deficiency assessment against Nucor for sales and use taxes for the period October 1, 1984, through September 30, 1987, and denying its request for sales and use tax exemptions for its purchases of lance pipes, stirring lances,

and mill rolls used in the production of steel at its Utah facilities.

Nucor is engaged in the business of manufacturing and marketing steel products at a steel mill located near Plymouth, Utah. It converts scrap metal and other materials into steel products which it sells to its customers. Nucor also sells or exchanges slag and scale, co-products of its operations, for consideration. The process of converting scrap metal into steel products takes place in three basic steps: melting scrap metal, refining the molten metal into steel by adding necessary reagents and removing undesirable impurities, and rolling or shaping the steel into the desired form.

To begin the melting process, Nucor places approximately 70 tons of scrap metal into an electric arc furnace. Next, it adds carbon graphite electrodes and charges them with high-voltage electricity. The electricity arcs between the electrodes and through the scrap metal, creating the intense heat necessary to melt the scrap metal. During this process, the carbon graphite electrodes melt in the heat and become an ingredient or component of the molten metal. Therefore, the carbon graphite electrodes serve the dual purpose of providing a charge for the melting process and providing carbon, a necessary strengthening agent, to the final steel product.

Nucor injects oxygen into the furnace to maintain sufficient heat during the melting process. Nucor inserts a one-inch diameter steel pipe, known as a lance pipe, through the door in the furnace and forces oxygen through the pipe. Because of the intense heat, the leading edge of the iron lance pipe melts inside the furnace and becomes part of the molten metal. As it does so, additional lance pipe is inserted into the furnace, much as a pencil is continually inserted into a pencil sharpener. One hundred percent of the lance pipe melts and becomes an ingredient of Nucor's finished steel product.

After the metals have melted, Nucor "taps" or opens the furnace using a quarter-inch steel lance pipe, which also feeds continuously into the furnace and melts into the finished product. Tapping increases the temperature in the furnace and allows molten metal to pour into a ladle for further refining and transportation. Nucor then lowers a stirring lance into the ladle and injects nitrogen and argon gas into the molten steel, causing impurities to rise to the surface and become part of the steel co-product known as slag. The stirring lance is an iron pipe 72 inches long and 1.9 inches in diameter. It is surrounded by a layer of ceramic material 3.5 inches thick. The stirring lance melts during this stirring process. The steel pipe portion of the stirring lance becomes part of the finished steel product, while the ceramic coating rises to the top of the ladle and becomes part of the slag.

After the refining process is completed, the ladle transports the molten metal to a continuous casting machine. This machine partially cools the metal and shapes it into pieces of steel approximately 6 inches high, 6 inches wide, and 27 feet long, known as billets. Rollers draw the billets through a series of mill stands and shape them into the forms requested by Nucor's customers. The mill stands consist of a drive mechanism and two mill rolls. The mill rolls are steel cylinders, cut by a lathe into a shape calculated to produce the desired steel product. The drive mechanism turns the two mill rolls in opposite directions to draw the billets through the cut. This shapes the billets to the desired form as they are drawn through successively smaller mill roll cuts.

As a result of the heat and pressure of the rolling process, the steel from the mill rolls wears off and transfers to the hot billets or flakes off as an iron oxide known as "scale." When a mill roll loses 12 percent of its original substance to the milling process, it must be replaced. Nucor then removes the mill roll from its mill stand and uses it as raw material or scrap in subsequent furnace loads.

On October 27, 1988, the Auditing Division of the Tax Commission issued a statutory notice of deficiency against Nucor for the period of October 1984 through September 1987, which concluded that Nucor's

purchases of graphite electrodes, lance pipes, stirring lances, and mill rolls were subject to sales and use tax. The assessment issued to Nucor concluded that Nucor owed back sales and use taxes for its purchases of these items.

On November 23, 1988, Nucor timely filed a request for agency action protesting the audit report. Nucor asserted that Utah Code Ann. § 59–12–104(28) (1987) exempted its purchases from sales and use taxes.[1] A formal hearing was held on October 11, 1989. On June 7, 1990, the Commission issued its final decision, allowing the exemption for the purchase of graphite electrodes, but upholding the tax on the lance pipes, stirring lances, and mill rolls because Nucor's principal use of these items was as equipment, not as ingredients for its products. On July 9, 1990, Nucor deposited the deficient sales and use tax for its purchases of lance pipes, stirring lances, and mill rolls with the Commission and filed a petition for review of final agency action before this court.

 The Utah Administrative Procedures Act (UAPA) governs our review of the Commission's decision.[2] Under UAPA, this court reviews an agency decision which interprets statutory law using the correction of error standard found in section 63–46b–16(4)(d), unless the legislature has granted the agency discretion in interpreting and administering the statute.[3] Agency discretion may be either express or implied and, if granted, results in review of the agency action for an abuse of discretion under section 63–46b–16(4)(h)(i).[4]

 Nucor claims exemption under section 59–12–104(28) of Utah's tax code. This section reads:

> The following sales and uses are exempt from sales and use taxes imposed by this chapter:
>
> . . . .
>
> (28) property purchased for resale in this state, in the regular course of business, either in its original form or as an ingredient or component part of a manufactured or compounded product.

The parties do not dispute that the stirring lances, lance pipes, and mill rolls are purchased in the regular course of business and become ingredients in Nucor's final product. The parties do dispute whether the items were "purchased for resale" under the meaning of the statute. Nucor contends that a proper interpretation of section 59–12–104(28) allows the exemption so long as Nucor had any intent, however incidental, to use the items as ingredients in its products. The Commission contends that the statute exempts only items purchased for the primary purpose of resale and that incidental use of the items in Nucor's product does not fit within the exemption. This case therefore turns on the scope of the "purchased for resale" requirement. Resort to traditional rules of statutory construction does not aid in determining this issue,[5] which appears to be a matter of policy that the legislature left to the Commission's discretion.[6] Therefore, the proper standard of review of the Commission's decision is the abuse of discretion

---

1. Utah Code Ann. § 59–12–104 was amended effective July 1, 1991. Following this amendment, the relevant subsection was renumbered as section 59–12–104(27). This opinion shall continue to refer to subsection (28), however, in accordance with the numbering in effect during the times relevant to this appeal.

2. Utah Code Ann. §§ 63–46b–1 to –22 (1989).

3. *Morton Int'l, Inc. v. Auditing Div.*, 814 P.2d 581, 588–89 (Utah 1991).

4. *See id.* at 587–88.

5. The plain meaning of the words "purchased for resale" implies that a company's purpose in buying an item must be to resell that item.

However, the language does not clarify to what level that "purpose" must rise. The language supports two interpretations, either of which could be used in the Commission's decision. Therefore, it is reasonable to assume that the legislature granted the Commission discretion in choosing which of the interpretations best promotes its policies. *See Morton,* 814 P.2d at 588–89.

6. *See Morton,* 814 P.2d at 592 (recognizing implicit grant of discretion to Commission in determining meaning of "equipment" in tax exemption statute).

standard found in section 63–46b–16(4)(h)(i).[7]

The Commission construed the phrase "purchased for resale" narrowly, requiring that Nucor have resale as its primary purpose behind the items' purchase. As support for its interpretation, the Commission cited our decision in *Union Portland Cement Co. v. State Tax Commission.*[8] In *Union Portland,* we held that incidental ingredients which entered a product during the manufacturing process of cement were not exempt from use tax under the exemption statute then in effect.[9] We reasoned that the statutory exemptions went hand in hand with the sales and use tax statutes, with the purpose of placing the tax burden upon the ultimate consumers of products.[10] Under the scheme, a manufacturer or wholesaler that purchased items for resale could avoid the tax, which passed to the consumers upon their purchase of the finished product.[11] The determination of a purchaser's status as a consumer subject to tax or as a wholesaler or manufacturer exempt from taxation depended on the purchaser's use of the item and the reason for its purchase.[12]

■ In the *Union Portland* case, we determined that the purchaser was an end user or "consumer" based upon its use of the products for which it claimed exemp-

tion.[13] We inherently recognized in our decision that Union Portland's primary intent in purchasing the items was to use them as manufacturing equipment, not as raw ingredients for cement.[14] Therefore, we found Union Portland liable for the tax.[15] The Commission followed the *Union Portland* holding when it interpreted the statute to require that the items be purchased primarily for resale and not for consumption by the manufacturer as part of the manufacturing process. This narrow construction of the statutory language also follows the general rule that tax statutes are to be strictly construed against one seeking exemption.[16]

In applying the statute to Nucor's purchases, the Commission determined that Nucor purchased the items at issue primarily for their use as equipment and only incidentally for their use as ingredients in the manufacturing process. Therefore, the Commission found Nucor liable for sales and use taxes on the items. This determination was reasonable given the facts of the case and our prior holding in *Union Portland.* Nucor purchased the items at issue as a final consumer of those items. Nucor purchased and used the items as lance pipes, stirring lances, and mill rolls, not as raw iron and ceramic. The items

**7.** *See Morton,* 814 P.2d at 587–89.

**8.** 110 Utah 135, 170 P.2d 164 (1946), *reh'g granted on other grounds,* 110 Utah 152, 176 P.2d 879 (1947).

**9.** *Union Portland,* 170 P.2d at 172.

**10.** *See id.; see also Hardy v. State Tax Comm'n,* 561 P.2d 1064, 1065 (Utah 1977); *Merrill Bean Chevrolet, Inc. v. State Tax Comm'n,* 549 P.2d 443, 445 (Utah 1976); *Sine v. State Tax Comm'n,* 15 Utah 2d 214, 390 P.2d 130, 131 (1964); *Barrett Inv. Co. v. State Tax Comm'n,* 15 Utah 2d 97, 387 P.2d 998, 999–1000 (1964); *E.C. Olsen Co. v. State Tax Comm'n,* 109 Utah 563, 168 P.2d 324, 329–30 (1946).

**11.** *See Union Portland,* 170 P.2d at 171; *Hardy,* 561 P.2d at 1065; *Merrill Bean Chevrolet,* 549 P.2d at 445; *E.C. Olsen, Inc.,* 168 P.2d at 329–30.

**12.** *See Union Portland,* 170 P.2d at 171.

**13.** *Id.* at 171–72. Union Portland claimed exemption for its purchases of iron grinding balls,

coal, and firebricks which were destroyed during the manufacturing process. From these items, iron filings, brick fragments, and coal ash entered the cement product as incidental ingredients.

**14.** *See id.* (recognizing the "incidental" nature of the items as ingredients, while noting that the items were consumed as manufacturing equipment: "The fact that a machine used in the manufacturing process is worn away in whole or part during the manufacturing process and the materials resulting incidentally enter into the products manufactured does not exempt the manufacturer from either the sales or use tax on the purchase or use of that machine." *id.* at 171).

**15.** *See id.*

**16.** *See Morton,* 814 P.2d at 592 n. 60; *Parson Asphalt Products, Inc. v. Utah State Tax Comm'n,* 617 P.2d 397, 398 (Utah 1980); *Great Salt Lake Minerals v. State Tax Comm'n,* 573 P.2d 337, 340 (Utah 1977).

were purchased for their value as equipment to aid in the manufacturing process; their value as ingredients in the end product was incidental. Comparing the prices of lance pipes, stirring lances, and mill rolls with the price of comparable raw ingredients supports this conclusion.[17] Clearly, Nucor did not primarily purchase the items as an iron source but as equipment to further the manufacturing process, which equipment then incidentally supplies a portion of the iron in the product.

The Commission's interpretation of the exemption statute and application of it to Nucor's purchases of lance pipes, stirring lances, and mill rolls is reasonable in all respects. We therefore affirm the decision of the Commission.

HOWE, Associate C.J., and DURHAM, STEWART and ZIMMERMAN, JJ., concur.

---

17. The Commission found that stirring lances sell for an average price of $0.68 per pound, lance pipes sell for an average of $0.55 per pound, and mill rolls sell for between $0.48 and $5.23 per pound, while scrap metal used as an iron source in Nucor's products sells for $0.05 per pound.